FILED

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS' DIVISION

2007 NOV -2 PM 1: 50

CLE... ...ICT COURT
MIDDLE DISTRICT OF FLORIDA
FT MYERS DIVISION

| | |
|---|---|
| Nancy Jo Grant | § |
| Adeline Hudson, and | § |
| Johnnie Henry Smith, Jr. | § |
|     Plaintiffs, | § |
| | § |
| **versus** | § |
| | § |
| Judge James S. Parker, | § |
| Sheriff Vernon L. Keen, | § |
| Donald Hartery, | § |
| Scott Spivek, | § |
| Paul Sullivan, | § |
| Joseph Fritz, | § |
| Christopher Dale, | § |
| Grady Irvin, | § |
| Barry William Rigby, Chair Client Secur., | § |
| Benjamin Lawrence Ries, Chair Profess., | § |
| Eugene Keith Pettis, Chair Judicial Ind., | § |
| Bruce Douglas Lamb, Chair U.P.L., | § |
| Laura J. Boeckman, Chair Cons.Protect., | § |
| Francisco R. Angones, Pres. of Fla. Bar, | § |
|     Defendant(s). | § |

CASE NO.: 2:07-cv-717-FtM-
34 DNF

**MMH**

DOUGLAS N. FRAZIER
U.S. MAGISTRATE JUDGE

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, ANTITRUST, & DECLARATORY JUDGMENT RE: PUBLIC TRUST

1.    Plaintiff Nancy Jo Grant is a resident of DeSoto County who has been attempting to attract public scrutiny, effectively to "blow the whistle", on dishonest lawyers and judges and the failure of the legal system to protect Florida's most oppressed and neediest citizens, the victims of its criminal justice system, for going on twenty-five years.

2.    This Court has Federal Question jurisdiction pursuant to 18 U.S.C. §§1964(a) & 1964(c), 28 U.S.C. §1331, 28 U.S.C. §1343, and 42 U.S.C. §§1981, 1983, 1988, in that Plaintiffs seek both damages as well as prospective, declaratory and injunctive relief.

3. Venue is proper in the Fort Myers Division of the Middle District of Florida because all or most of the transactions and occurrences giving rise to this complaint took place in DeSoto County, in the Fort Myers Division of the Middle District of Florida.

4. Plaintiff Johnnie Henry Smith is a African-American inmate in the Florida prison system (born November 28, 1978), arrested and/or jailed by and under the authority and pursuant to the policies of Vernon L. Keen (a modern reincarnation of the late Sheriff Clark of Dallas County, Alabama, of 1960s Civil Rights-era infamy) and now serving a life sentence imposed by a white judge (James S. Parker) and an all-white jury who has retained and been cheated by at least five different lawyers. According to the Court file, the alleged offense date was September 15, 2000, and the disposition date was December 16, 2002, (DeSoto County Circuit Clerk of Court Felony File 14 2000 CF 000430).

5. Plaintiff Adeline Hudson is the mother of Johnnie Henry Smith, Jr. She arranged or advanced money for at least six lawyers to represent her son, and she was likewise deceived and cheated; moreover on at least one occasion Defendant Donald Hartery committed an assault on her with threatening conduct, criminal trespass, harassment and intimidation.

6. Plaintiffs allege that there are customs, practices, and policies which have been formulated and implemented in DeSoto County, Florida, against the civil rights of the people of Florida, especially those residing in DeSoto County, and that among these customs, practices, and policies are violations of the 14th Amendment guarantee of equal protection and due process of law, including especially but not limited to the federal rights secured and guaranteed by 42 U.S.C. §1981, which states:

*Grant, Hudson, & Smith Complaint for Civil Rights Violations against DeSoto County, Florida, and Certain Officers of the Florida Bar*

2

**(a) Statement of equal rights**

**All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.**

**(c) Protection against impairment**
**The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.**

7.    Specifically, individuals accused of crimes, especially African-Americans, are subjected, in the 12th Judicial Circuit, to more severe punishments, pains, and penalties than white people in DeSoto County, as are white people who openly associate with and advocate equal rights for African-Americans (such as Nancy Jo Grant) and full-constitutional and procedural rights for all prisoners (such as Nancy Jo Grant).

8.    Plaintiffs Adeline Hudson and Johnnie Henry Smith, Jr., have further been the victims of non-governmental discrimination and unfair treatment on account of their race in violation of 42 U.S.C. §1981(b)-(c) by the five attorney defendants in this case, Scott Spivek, Paul Sullivan, Joseph Fritz, Christopher Dale, and Grady Irvin, who together collected more than $18,100.00 from the Plaintiffs, and literally did nothing for Johnnie Henry Smith, Jr., provided no meaningful services, did no meaningful legal work.

9.    Scott Spivek was paid approximately $7,500 and did nothing the entire time Johnnie was in jail; Scott Spivek also took Johnnie's income tax check of $2,000 for a fee over a contraband charge while Johnnie was in the DeSoto County jail.  Johnnie Henry Smith, Jr., is and was a non-smoker and the charge was nolle prossed at his trial; the extra charges were a matter of DeSoto County extortion and pressure. (Desoto Circuit Clerk: 14 2001 CF 000055).

10.     After Johnnie Henry Smith, Jr., was tried and convicted, and sentenced by Judge James S. Parker (far above the sentencing guidelines), he appealed.  The appeal was denied. After that an attorney, Joseph Fritz called Adeline Hudson and told her he was fishing partners with Judge Parker and could get the sentenced reduced; Adeline Hudson's church raised up two thousand six hundred dollars, ($2600.00) to pay Fritz.

11.     For this fee, Fritz did file a motion to mitigate and detailed a story about a person who advised Johnnie NOT to take the 10 yr. plea offered by the state, falsely suggesting that it was Nancy Jo Grant. Judge Parker denied the motion, which then should have gone to the appellate court but no one would do it and the family couldn't afford another attorney.  Fritz is the attorney Donald Hartery subpoenaed for the Nancy Grant case when there was no court reporter.  Plaintiffs allege that Fritz misled them and made false and unethical claims of being able to improperly influence a judge---or else falsely and inaccurately claimed that he could influence a judge at all.

12.     Christopher Dale was another attorney was paid $2,000 and did nothing

13.     Grady Irvin was paid $4,000 and did nothing.

14.     The total damages listed are $18,100.00, in addition to the lengthy time of wrongful imprisonment.  After Nancy Grant formed the Florida Pro se Bar, Inc. Aaron Shaw at the Florida Civil Commitment Center agreed to do a 3.850 a post-conviction pleading for Johnnie Smith. Johnnie time was running out to file it. Nancy Grant started mailing copies of the transcripts to Aaron and Aaron prepared the 3.850. Johnnie Smith gave permission for Aaron to sign it because of the time factor.  The 3.850 sat in Judge Parkers' office for almost a year until it was denied.

15.   Thus, Johnnie Smith was denied equal protection of the laws by the government and by his (and his mother Adeline Hudson's) de facto inability to make and enforce contracts with attorneys, from whom they enjoyed no benefits and against whom they had no remedies, all in violation of 42 U.S.C. §1981(b):

> (b) "Make and enforce contracts" defined
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
> (c) Protection against impairment
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

16.   Thus, Plaintiffs allege that it is an illegal custom, practice, and policy protected under colour of law in DeSoto County that licensed attorneys can, in effect, steal money from prisoners under false pretenses of undertaking legal work and still be afforded the full protection of the law---there is no license to practice law, apparently, only a license to steal, especially from persons accused of a crime, especially from black people.

17.   Another officially sanctioned illegal and unconstitutional custom in the State of Florida, DeSoto County, is the denial of the right to speedy trial. By the routine denial of this right, guilty pleas are eventually extorted from all or almost all long-term prisoners, who over time become desperate or severely depressed prisoners.

18.   Johnnie Smith was charged with a bank robbery, which is normally a federally prosecuted crime. The federal authorities (US Attorney's Office in Fort Myers) did not prosecute due to lack of evidence but Johnnie still spent over 2 and1/2 yrs in county jail having never waived his right to speedy trial. There seems to be no minimum quantum of evidence necessary to convict a black man in DeSoto County (such as Johnnie Smith), or a white woman accused of helping prisoners, black or white (such as Nancy Jo Grant).

## OCEANS OF INACTION: THE ROLE OF THE FLORIDA BAR

19.    The State Bar of Florida, aka "The Florida Bar" holds itself out as the supreme guarantor of professionalism in the practice of law, consumer protection against both unprofessional lawyers and the unauthorized practice of law, and guarantees the security of clients through the client security fund.  According to the Florida Bar's own website, more than 2000 attorneys statewide are members of committees dedicated to these worthy causes, and above all to "protecting rights, pursuing justice, and promoting professionalism" (the State Bar's motto, engraved on almost every public page of this immense website).

20.    Plaintiffs allege that the State Bar of Florida, in fact, is responsible for the protection of attorneys from scrutiny, and in particular of the protection of attorneys and judges who oppress the poor, the educationally disadvantaged, the marginal members of society, especially African-Americans and the whites who choose to associate with them, even in the present day and at the present time, even in October of 2007; even most black people in law and government are more like "Uncle Toms" allied with the white masters (compare, for example, an "Auntie Tomasa", U.S. Secretary of State Condoleeza Rice).

21.    Plaintiffs allege that the State Bar of Florida, in particular, is responsible for protecting Florida lawyers from what would otherwise be sure and certain liability for mail and wire fraud within the sense and meaning of 18 U.S.C. §1346:

> **18 U.S.C.A. § 1346**
>
> United States Code Annotated
> Title 18. Crimes and Criminal Procedure
> Part I. Crimes § 1346. Definition of "scheme or artifice to defraud"
> Chapter 63 Mail Fraud § 1346. Definitions of "scheme or artifice to defraud".

**For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.**

22.     In connection with this allegation, that "The Florida Bar" exists as a scheme or artifice to defraud by the use of the mails and the wire services to deprive the people of Florida of their intangible right to honest services from the attorneys of this state, Plaintiffs have named six officers of "The Florida Bar" as Defendants in this case, to wit:

23.     Barry William Rigby, Chair of the Committee on Client Security Fund, Benjamin Lawrence Ries, Chair of the Committee on Professionalism, Eugene Keith Pettis, Chair of the Judicial Independence, Bruce Douglas Lamb, Chair of the Committee on the Unauthorized Practice of Law, Laura J. Boeckman, Chair Consumer Protection Committee, and Francisco R. Angones, President of The Florida Bar.

24.     Plaintiffs allege that these Defendants have agreed and conspired among themselves to violate the mail and wire fraud statutes to the end of depriving Plaintiffs and those similarly situated of the intangible right to honest services by attorneys in Florida, acting as fiduciaries for their clients.

25.     Plaintiffs ask that the Court investigate these allegations, pursuant to its special remedial powers under 42 U.S.C. §1988(a) and that the court, upon final trial-by-jury, for which demand is hereby made and tendered, that the Court Declare and Adjudge, pursuant to 42 U.S.C. §§1981 and 1983, that the aforementioned six officers of "The Florida Bar," acting in their official capacity, have unreasonably withheld action and thereby countenanced and endorsed years of open conversion and embezzlement of funds such as those described in this lawsuit by attorneys, including but not limited to the five private attorney defendants in this case, within the purview of "The Florida Bar."

26.     Plaintiffs further allege that the above-enumerated State Bar and its standing or special committees, and their chairs, especially but not limited to the committees on professionalism, consumer protection, unauthorized practice of law, and the client protection fund, have in effect acted as a fraudulent smokescreen behind which attorneys can, in effect, engage in an ongoing pattern of racketeering via wire and mail fraud, all in violation of 18 U.S.C. §§1341, 1343, and 1346.

27.     Plaintiffs finally allege that "The Florida Bar" provides this protective smokescreen and over its attorney members who join the bar for the purpose of deriving an income stream from their pattern of racketeering in violation of 18 U.S.C. §1962(a), which makes it unlawful for any person who has received income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce, such as the law firms, private legal practices, and law offices of each of the five private DeSoto County Attorneys Spivek, Sullivan, Fritz, Dale, and Irvin named as Defendants in this case, each of which is an enterprise engaged in, and the activities of each of which affect, interstate commerce.

28.     Plaintiffs ask that the Court will investigate, and upon final trial-by-jury, find that a pattern of racketeering exists and that the Florida Bar, especially the five committees and committee chairs named, and the President of the Florida Bar, are directly responsible as accessories for the failure of effective oversight charged to these officers

and committees of the Florida Bar by law and the Supreme Court, and that Plaintiffs should be awarded treble their actual damages starting with, at a minimum, the $18,100.00 paid to attorneys who took no action on behalf of Plaintiff Johnnie Henry Smith, Jr., which upon trebling would be equal to a minimum of $54,400.00, not counting the personal injury of false arrest and wrongful imprisonment (excessive time and denial of speedy trial) inflicted upon the Defendant Johnnie Henry Smith, Jr., who is still in jail serving a sentence for which either an ordinary white man, or an African-American of significant wealth, would have by now been released from prison, especially in the absence of any prior record, as was Johnnie Henry Smith, Jr..

29.     Because each of the five private attorneys named as Defendants in this case owned or operated one or more businesses, including a law office, Plaintiffs allege that they are also guilty of multiple violations of 18 U.S.C. §1962(b), which provides:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

30.     Or in the alternative, Plaintiffs allege that if these five private attorneys named as Defendants were merely employed by a law firm owned by another, then they are guilty of multiple violations of 18 U.S.C. §1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

31.     Finally, the six officers of "The Florida Bar" named as Defendants in this case are also guilty, by way of inaction and failure of their public trust of oversight, of conspiracy,

agreement, whether tacit or explicit, with the five named attorney Defendants, all in violation of 18 U.S.C. §1962(d).

32.    Plaintiffs ask this Court to declare and adjudge that the named Officers of the Florida Bar have been grossly negligent in the exercise of their duties of oversight, supervision, and regulation of the bar, including the Chairman on the Committee of Judicial Independence, Eugene Keith Pettis, whose sub-website on Committee on Judicial Independence is related to a public information portion of the Florida Bar website on "Judicial Independence: Case Law" which states that it was updated as of August 23, 2007, and is, with disturbing accuracy, absolutely blank, lacking even a single entry:

http://www.floridabar.org/tfb/TFBLegNW.nsf/730c2d2b60557ff1852570020047237e/6c
bf18635699bb0585257302004fe157?OpenDocument:

**Public Information**
**Judicial Independence**
**Case Law**
[Updated: 08-23-2007]

33.    At least "The Florida Bar" in at least this one instance, cannot be accused of false advertising, because "nothing from nothing leaves nothing," and there is no judicial independence in DeSoto County at least, because Judge James S. Parker works closely with Sheriff Vernon L. Keen as well as Donald Hartery on not only Johnnie Henry Smith's case but also Nancy Jo Grant's case.

34.    The two cases are related because Nancy Jo Grant is on close and friendly terms with Adeline Hudson. Nancy Grant attempted to help because the sentence imposed by Judge James S. Parker on Johnnie Smith had reached outside the guidelines, and became an enhanced retaliatory sentence. This action was imposed on Johnnie Smith because of Nancy Jo Grant's activities on behalf of Florida State prisoners. In addition to this, the sentence was an automatic enhancement which is regularly imposed on black prisoners

(mislabeled on the DeSoto Circuit Clerk's website as white, presumably to disguise the statistical truth regarding the oppression of African-Americans and the denial of equal protection under 42 U.S.C. §1981. The false entry describing Johnnie Henry Smith, Jr., as "Race: W" can be found on the DeSoto Clerk of the Circuit Court website: http://www.desotoclerk.com/dpa/cvweb2.asp?ucase_id=75465314.

35.     Plaintiffs also and further ask, move, and request this United States District Court to allow discovery relevant to establish, make investigations, and upon final trial-by-jury declare and adjudge that the maintenance of the five committees by "The Florida Bar" whose chairs are herein made parties defendant is a deceptive or manipulative act or practice likely to cause harm, such as the harm suffered by the Plaintiffs herein, in violation of 15 U.S.C. §§45(a)(1) and 45(a)(4)(A).

36.     Plaintiffs also and further ask, move, and request this United States District Court to allow discovery relevant to establish, make investigations, and upon final trial-by-jury declare and adjudge that the President and Officers of "The Florida Bar" named as Defendants in this case have administered and governed "The Florida Bar" as a series of contracts or combinations with its members, in the form of a trust or otherwise, or as a mere illegal conspiracy in restraint of trade or commerce among the several states or with foreign nations in violation of 15 U.S.C. §1.

## JURY DEMAND

37.     **Plaintiffs Nancy Jo Grant, Adeline Hudson, and Johnnie Henry Smith, Jr., pray that the Court will set her Complaint against Judge James S. Parker, and all the other above-named Defendants including but not limited to the five named private attorneys and the six officers of "The Florida Bar," for final trial-by-jury,**

demand for which is hereby made in accordance with the Seventh Amendment to the United States Constitution, Rule 38(b) of the Federal Rules of Civil Procedure and all other applicable rules, as well as 28 U.S.C. §§1861 *et seq.*.

38. Plaintiffs' Jury Demand is timely in that it is submitted as part of their Plaintiff's Original Complaint, which is Plaintiffs' initial pleading in this case within the meaning of FRCP Rules 8(b) and 38(b):

## FRCP Rule 38(b) Demand.

**Any party may demand a trial by jury of any issue triable of right by a jury by (1) serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to the issue, and (2) filing the demand as required by Rule 5(d). Such demand may be indorsed upon a pleading of the party.**

39. Wherefore, Plaintiffs Nancy Jo Grant, Adeline Hudson, and Johnnie Henry Smith, Jr., demand a trial-by-jury of all questions of fact and all mixed questions of law-and-fact so triable under the law of the land as interpreted by the United States Supreme Court, including but not limited to all questions of liability, damages, and the objective reasonableness of actions taken by governmental officers.

## PRAYER FOR RELIEF

40. Wherefore, Plaintiffs pray that the Court will hear evidence, make findings, adjudge and declare the prosecution of Johnnie Henry Smith, Jr., to have been unconstitutional, a denial of equal protection and a violation of the equal protection of the law guaranteed by 42 U.S.C. §1981, and will accordingly declare the conviction of Johnnie Henry Smith, Jr., to be null and void.

41. Plaintiffs further pray for all their actual, consequential, and special damages pursuant to 42 U.S.C §§1981 and 1983.

42.   Plaintiffs further pray for trebled actual, consequential, and special damages pursuant to 18 U.S.C. §§1961, 1962(a)-(d), and 1964(c).

43.   Plaintiffs further pray for a comprehensive investigation of the conduct of the 12th Judicial Circuit and the State Attorney's Office in and for the 12th Circuit and DeSoto County generally, and that this court will declare and adjudge that the common customs, practices, and policies of the county are infringing upon the enumerated, fundamental, constitutionally guaranteed rights of plaintiffs and other persons and parties similarly situated, and that the Court will enjoin those common customs, practices, and policies of the DeSoto County Courts, prosecutors, and attorneys which regularly tend to or do in fact actually infringe upon the aforementioned rights of the Plaintiffs and similarly situated parties, and that the Court will take the time to hold hearings and fashion all such special remedies as may be appropriate to eliminate the abuses and injuries herein-above complained of, including imposition of excessive punishment and penalties on African-Americans, and correct the unconstitutional customs, practices, and policies of discrimination which led to this situation, including but not limited to the complete failure of "The Florida Bar" to exercise any effective oversight or control or consumer protection on behalf of the Plaintiffs and others similarly situated.

44.   Plaintiffs pray that the Court will specifically compel the Florida Bar Client Security Fund, Chairman Barry William Rigby, to reimburse Johnnie Henry Smith, Jr., and Adeline Hudson treble their actual damages in this case, including but not limited to their attorneys' fees.

45.   Plaintiffs also and in conclusion pray for all such other and further relief to which they may be entitled as a matter of law or in equity.

Respectfully submitted,

*Nancy Jo Grant*

Nancy J. Grant, pro se
Plaintiff, in propia persona
803 E. Magnolia Street
Arcadia, Florida 34266
TEL.: (863) 494-0363
e-mail: ngrant@strato.net

*Adeline Hudson*

Adeline Hudson, Plaintiff, pro se
Plaintiff, in propia persona
Post Office Box 1555
Wachula, Florida 33873

Johnnie Henry Smith, Jr., pro se
Plaintiff, in propia persona
DOC# 0-H04050 B1211U
Hendry Correctional Institution,
Main Unit
12551 Wainwright Drive
Immokalee, Florida 34142-9631